**MURIEL O'NEAL, Administratrix of the Estate of Robinson O'Neal, Deceased, Plaintiff**

v.

**M. MALCOLM PROSPER and ADA ROSALIA PROSPER, Defendants**

Civil No. 44-1972

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

June 5, 1974

MICHAEL, *Judge*

OPINION

This cause came before the court for hearing on the 20th day of December, 1972. Plaintiff, Administratrix of the Estate of Robinson O'Neal, appeared in person and was represented by her attorney, Alphonso A. Christian, Esq. The defendants also appeared in person and were represented by their attorneys, Birch, De Jongh & Farrelly, Alexander A. Farrelly, Esq., of counsel.

The court heard the testimony of the parties and received documentary evidence introduced by them, and the evidence being closed and briefs filed and the matter submitted for consideration and decision without further argument, the court now makes the following:

FINDINGS OF FACT

1. That the Promissory Note in the amount of $5,000 sued upon by the Plaintiff, Executrix of the Estate of Robinson O'Neal, came about as follows:

2. That the parties were about to go to the Virgin Islands National Bank to close a real estate transaction on the 5th day of July, 1968, everything concerning which had already been agreed upon by them, when the plaintiff's decedent, hereinafter called the decedent, informed the defendant Prosper that "You have to give me some more money for this house, otherwise we aren't closing today."

3. That prior to the date when decedent informed the principal defendant, Malcolm Prosper, he would have to pay more money as indicated above, the parties, as stated

by the plaintiff's attorney in his brief, ". . . were close home-visiting, eating, and drinking friends, all originally from the same national region, cultural and ethnic backgrounds."

4. That sometime before the date when decedent informed defendants they would have to pay more money, etc., negotiations had been made whereby the Virgin Islands National Bank had agreed to a First Priority Mortgage Loan to the defendants in the amount of $30,000 in connection with the purchase of the house from the decedent, which decedent knew about and had agreed upon.

5. That in reliance upon the agreement of the parties, decedent signed the Deed transferring the property to the defendants on June 3, 1968, the consideration of which was $45,000. This Deed was submitted to the Department of Public Works and the Tax Assessor's Offices two days later for the usual recordation in those offices.

6. That prior to the date of closing the defendants had paid the decedent $15,000 which, together with the loan of $30,000, would amount to the consideration the parties had agreed upon and as contained in the Deed.

7. That relying upon the agreement of the decedent to sell his property to the defendants for the consideration of $45,000, defendants sold their home on June 12, 1968, nine days after decedent had signed the Deed, and of which decedent was fully aware, close friends as they were and as admitted by the Plaintiff's attorney. (See copy of Defendants' Deed to Ivan and Iris Chalwell, husband and wife, submitted to the court by defense attorney, February 7, 1974, as promised at the hearing of this matter on December 20, 1972.)

8. That on July 5, 1968, a little over a month after the Deed was signed transferring the property to the defendants in consideration of the $45,000, and before the parties

147

arrived at the Bank for the closing, the matter of the Promissory Note now sued upon was raised.

9. That notwithstanding defendant's protestation about the signing of the note, he reluctantly went with the decedent at his request to a Notary Public before whom the Note was signed.

10. That believing decedent's action at the time was unjustifiable, defendant Prosper requested the decedent to accompany him to the lawyer who had prepared the deed before going to the bank for closing, which request was refused by decedent.

11. That by defendant's testimony and the manner in which he testified, it is apparent to the court that nothing was said by him about the Note at the closing for the reason he was faced with the fact that he had sold his home, relying upon decedent's Deed and other arrangements of the parties, and feared there would be no closing, as threatened by the decedent. It is also apparent to the court that the decedent said nothing at the closing as he did not want the Bank's representatives present to know that he had required the defendants to sign a Note for $5,000 more than the consideration contained in the Deed after threatening them with no closing if they did not sign it.

### CONCLUSIONS OF LAW

1. From the above the court concludes as a matter of law that the decedent, having agreed to sell the property to the defendants for an agreed price, and in consideration thereof the defendants had agreed to pay the decedent $15,000 in cash, which was already paid at the signing of the Note, leaving the balance of $30,000 to be paid through the loan from the Bank—which proceeds it was agreed upon would pay off the outstanding debt of the decedent to the said Virgin Islands Bank—at the time of signing the

Promissory Note by the defendants, there was no consideration therefor.

See Restatement, Contracts, Sec. 76, illustration No. 8, which states as follows:

"A enters into a contract with B to build a house, according to certain plans, for ten thousand dollars, which B agrees to pay. When the work is half done A finds that he will lose money by performing the contract, and informs B that the work will stop unless B promises to pay two thousand dollars additional for its completion. B makes the promise and thereupon A completes the building. There is no sufficient consideration for B's promise to pay additional sum. . . ."

2. By the testimony of the defendant and of the Bank's representatives, it is clear that the parties had agreed long before the date of closing as to price and manner of funding, so that the only thing left to be done at the bank on the day they appeared was to prepare the Real Estate Mortgage Loan Settlement Statement and to deduct from the $30,000 the decedent's indebtedness to the Bank. There was no future agreement to be reached by them. Consequently, as stated in Simpson on Contract, 2d Edition, Sec. 56 under Mutuality of Obligation, pg. 92(2), "A promise is non-detrimental where it promises no performance beyond what the promisor is already legally obligated to the promisee to perform." By the evidence the promisor, the defendant, was already legally obligated to pay to the promisee, the decedent, the balance of the consideration in the manner they had agreed upon. Consequently, the defendant was not legally obligated to pay anything more to the decedent when he signed the Note.

3. In this case the parties had already entered into a contract, the decedent to sell and the defendant to purchase. Both did things toward that end; the decedent signed the Deed and the defendant paid the decedent a portion of the agreed price and arranged with the bank and him to obtain

the balance, which the decedent promised to accept and did receive. There is nothing in the record to indicate that the seller reserved a power of cancellation. Therefore, when he requested additional funds there was no consideration therefor.

4. In addition to what has been stated above concerning consideration, the action of the decedent in signing the Deed and having it sent to the Government offices above named, together with the other things done by the parties in relation to the sale, must have induced the defendants in making such a detrimental, substantial and material change in their lives by selling their home on reliance thereof. Such reliance which decedent knew about all along should be sufficient consideration in equity.

Restatement, Contracts, Sec. 90, states as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

5. In view of the above, it appears to the court that injustice in this matter can be avoided only by enforcement of the promise of the decedent to sell the property to the defendant at the price bargained for.

6. The Court therefore concludes as a matter of law and equity, that at the time of the signing of the Promissory Note by the defendants, which is the subject matter of the case before it, there was no consideration therefor.

Let Judgment be drawn accordingly, with costs and an attorney's fee of $450.00 in favor of the defendants.